## CAREY v. SOCIAL SECURITY BOARD et al.
### No. 874.

·District Court, W. D. Kentucky, at Louisville.
Oct. 4, 1945.

Howard L. Van Arsdale, of Louisville, Ky., for plaintiff.

Francis M. Shea, Asst. Atty. Gen., David C. Walls, U. S. Atty., of Hardinsburg, Ky., Arnold Levy, Sp. Asst. to Atty. Gen., and Hubert H. Margolies, Atty., Dept. of Justice, of Washington, D. C., for defendants.

MILLER, District Judge.

The plaintiff, Rosalie B. Carey, guardian for Gerald C. Doyle, filed this action to review a ruling of the Appeals Council, Social Security Board, rendered on December 27, 1944. The procedure is authorized by Section 205(g) of the Social Security Act as amended, being Section 405 (g), 42 U.S.C.A. The ruling referred to denied a child's insurance benefits to her ward Gerald C. Doyle.

Helen Carey Doyle, the wage earner in this case, died April 21, 1944. On May 19, 1944 her mother Rosalie B. Carey applied for a child's insurance benefits on behalf of the wage earner's three year old child Gerald C. Doyle under Section 202(c) of the Social Security Act as amended, being Section 402(c), 42 U.S.C.A. The Bureau of Old-Age and Survivors Insurance of the Social Security Board disallowed the claim on the ground that the child was not dependent on wage earner on April 21, 1944. The claimant requested a hearing which was held on July 19, 1944. On October 14, 1944 the Referee made his findings and ruled that Gerald C. Doyle was not entitled to the benefits claimed. A review of this ruling was taken to the Appeals Council, Social Security Board, which affirmed the Referee's rulings. The present action followed.

The Referee's findings are supported by substantial evidence and are conclusive on the facts. Section 405(g), 42 U. S.C.A.; Walker v. Altmeyer, 2 Cir., 137 F.2d 531, 533. They are briefly as fol-

lows: In 1940 the wage earner married Aryle P. Doyle. They separated in October 1940. Their only child Gerald was born January 20, 1941. The parties were divorced in Ashland, Mississippi, on October 5, 1942. Gerald had lived with the wage earner from the date of his birth; his father had never seen him and had never contributed to his support prior to the divorce. When granting the divorce on the basis of the wage earner's answer and cross-petition the Court ordered Gerald's father to pay $4 a week to the wage earner for Gerald's support, beginning October 17, 1942. Before the divorce was granted the Court had awarded custody of Gerald to the wage earner by approving an agreement to that effect between the wage earner and her husband. The wage earner never remarried and Gerald has never been legally adopted. At times the wage earner's divorced husband was in arrears with his payments under the court order, but he made payments approximately once a month. He made at least eleven payments in 1943 and also at least eleven payments in the twelve months immediately preceding the wage earner's death. In those twelve months he paid $4 a week for each of 52 weeks. On three occasions in those twelve months he paid for eight weeks at a time. The Referee found that after the divorce the wage earner's divorced husband made his payments under the court order with fair regularity. In order to get the payments from the wage earner's husband it was necessary to employ the services of two attorneys, one in Louisville where she lived and one in Mississippi where the divorced husband lived. The payments from the divorced husband were actually collected by the Mississippi attorney and forwarded by him to the wage earner after he had deducted a fee of $1 for each $16 collected. The Mississippi attorney would not have made the collections with reasonable regularity, if at all, without consistent prodding by the wage earner's Louisville attorney. Because of his friendship for the family and the smallness of the amount collected, the Louisville attorney did not charge for his services, although he devoted a great deal of time and effort to the proceedings. The Louisville attorney estimated the reasonable value of his services at $250, which amount the Referee approved. In the year immediately preceding the wage earner's death she actually received from her divorced husband through the court order $194

($208 less the $14 fee of the Mississippi attorney), but to enable her to collect that amount her Louisville attorney rendered gratuitous services, the reasonable value of which was in excess of that amount. The divorced husband did not make any other contributions of any kind to Gerald, nor even send him a Christmas present. The wage earner paid all doctor's bills and hospital bills incident to the birth of Gerald and paid subsequent doctor bills amounting to about $65. The cost of Gerald's support in the year preceding the wage earner's death was approximately $15 a week, all of which was paid by the wage earner except the amount she received from her divorced husband. In other words, the $194 which the wage earner received from her divorced husband paid approximately 25 percent of Gerald's living expenses in that year; the wage earner paid the balance.

Section 202(c) of the Social Security Act as amended, Section 402(c), 42 U.S. C.A., provides, under conditions which have been complied with in this case, that the child of a deceased wage earner shall be entitled to receive a child's insurance benefits if the child was dependent upon the wage earner at the time of the latter's death. Paragraph (3) of subsection (c) sets forth the conditions under which a child shall be deemed dependent upon a father, and Paragraph (4) of subsection (c) sets forth the conditions under which a child shall be deemed dependent upon a mother. Paragraph (4) provides as follows: "A child shall be deemed dependent upon a mother * * * only if, at the time of such death * * * no parent other than such individual was contributing to the support of such child and such child was not living with its father or adopting father."

Since it is undisputed in the present case that the child was not living with its father, the only question for decision is whether the father "was contributing to the support of such child" at the time of the death of his mother within the meaning of the statute. If the divorced father was contributing to the support of the child at such time then the application for the child's insurance benefits was properly denied.

The Social Security Board has construed the phrase "was contributing to the support of such child" in the above section of the statute as meaning only con-

tributions that are regular and substantial. Such a construction seems both reasonable and liberal towards the child. It disregards occasional gifts and minor contributions at irregular intervals, but if the contributions are regular, whether voluntary or involuntary and constitute a material factor in the child's support, even though not the principal factor, it seems necessary to hold that the parent was contributing to the support of the child. The word "contribute" is defined by Webster's New International Dictionary as meaning "to give or grant in common with others, as to a common stock or for a common purpose; to furnish or supply in part; to give (money or other aid) for a specified object." We readily recognize its accepted meaning when we think of our own contributions to our church, to a charity or to a public purpose. Obviously it means to furnish or give the necessary funds only *in part,* in common with similar payments by others, many of which are often much larger than our own. It does not mean to give or furnish the *major* portion of the common fund being raised. It remains then to determine whether or not the contribution by the father under the present statute was so small as to be disregarded by the Court under the doctrine of "de minimis non curat lex." Any contribution that is substantial, as is required by the Social Security Board's construction of the statute, avoids the application of the doctrine referred to. The lexicographer above referred to defines substantial as "considerable in amount, value or the like * * *." It is agreed that the father's contribution to the child's support amounted to 25 percent of his total expenses. Such a percentage is a substantial amount in the opinion of the Court.

While the above construction may in some cases, as in the present one, operate against the child's right to the benefits in question, yet it will be seen that the same construction will operate in favor of the child's rights to such benefits when the question is whether or not the child was dependent upon a *father* at the time when he died. Under Paragraph (3) of Section 402 (c), 42 U.S.C.A., above referred to, a child is deemed dependent upon a father, when other conditions also exist, if the father was "contributing to the support of such child." It is probable that in the majority of cases of child's insurance benefits the question of dependency will relate to the father rather than to the mother. The construction here-in given to the statute will in the main operate to the benefit of such children.

The ruling of the Appeals Council, Social Security Board, of December 27, 1944 is accordingly affirmed. Section 405(g), 42 U.S.C.A.