**Gloria PARKER for Bradley Parker, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 81–3033.

United States Court of Appeals, Sixth Circuit.

Submitted on Briefs Feb. 1, 1982.

Decided March 18, 1982.

J. Miles Gibson, Barkan & Neff, Frank J. Neff, Columbus, Ohio, for plaintiff-appellant.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant-appellee.

Before LIVELY and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Gloria Parker filed an application on behalf of her son Bradley for surviving child social security benefits. That application was based on the social security insurance of Harry Roush, deceased, whom Ms. Parker alleged was the father of Bradley. Mr. Roush and Ms. Parker were never married to each other, neither was there ever written acknowledgment by Roush that Bradley was his son or a court decree to that effect.

In support of her contention that Mr. Roush was Bradley's father, Ms. Parker offered her own testimony, the testimony of Mr. Roush's mother, and the testimony of Bradley's aunt. These statements asserted that Mr. Roush and Ms. Parker had lived together before and after Bradley's birth, that Ms. Parker's sexual contacts had been only with Roush during the years they had lived together, that Roush had in fact accompanied Ms. Parker to the hospital for Bradley's birth, and that Mr. Roush had contributed to Bradley's support for at least ten years, even though Roush and Parker had separated approximately two years after Bradley was born.

42 U.S.C. § 416(h)(2) and (3) provide a number of means for determining whether an applicant for benefits is the child of an insured for purposes of the Social Security Act. The administrative determinations of Bradley's claim gave considerable attention to the fact that Bradley does not qualify under sections 416(h)(2) or (3)(A) or (3)(B) or (3)(C)(i). Much less attention was given to the one section under which Bradley might in fact qualify, section 416(h)(3)(C)(ii). That section provides that one may be deemed the child of a deceased insured if the insured is

shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time the insured died.

Bradley's claim was first considered by a "claims representative" who acknowledged the statements by Bradley's relatives that Mr. Roush is Bradley's father. The representative also acknowledged the evidence that Roush and Ms. Parker had lived together before, after, and during the time of Bradley's birth, and that Mr. Roush had contributed to Bradley's support even after Roush and Ms. Parker were separated. The claims examiner also acknowledged the testimony of Mr. Roush's mother that Roush had made a deathbed request that his mother continue to assist Bradley after Roush

died. The claims representative considered all this evidence to be "weakened" by the fact that a "friend" of Roush had told the claims representative during a telephone conversation that the friend did not believe Roush was Bradley's father. The representative concluded that the evidence did not show that Roush was Bradley's father.

Ms. Parker requested a Reconsideration Determination of Bradley's claim, and offered a number of canceled checks as additional evidence of Roush's support of Bradley over the years. The reconsideration report restated the evidence previously considered, and in addition noted that Mr. Roush had become disabled in 1971 by a deteriorative disease and had required hospitalization for the last years of his life. The report also noted that Mr. Roush had continued his financial support of Bradley until 1976 or 1977, and that Mr. Roush had died in 1978. The reconsideration report concluded:

> Upon careful consideration of all evidence it is determined that:
>
> ... 4. Ms. Snyder's statement that Mr. Roush did not deny paternity is reasonably convincing evidence of paternity, but it is not sufficient to entitle Bradley Parker because Mr. Roush was not living with him or contributing to his support at the time of death.

Thus, the Reconsideration Determination was that convincing evidence showed Bradley to be Roush's son, but that Bradley did not qualify for benefits under § 416(h)(3)(C)(ii) because Mr. Roush was not living with or contributing to the support of Bradley at the time Roush died.

At Ms. Parker's request a hearing was conducted by an Administrative Law Judge. The ALJ listened to the testimony of Ms. Parker, Mr. Roush's mother, and Bradley's aunt. Their testimony was entirely consistent with their prior statements, and the ALJ specifically found the witnesses to be "extremely credible and consistent in their testimony." However, the ALJ determined that Mr. Roush could not be deemed to be the father of Bradley in the absence of a written documentation of the fact, or a

valid marital relationship between Roush and Ms. Parker, or a court decree that Roush was Bradley's father.

Ms. Parker sought a district court review of this final determination of the Secretary. The district court granted the Secretary's motion for summary judgment on the basis that there was substantial evidence supporting the Secretary's determination that the evidence failed to show that Roush was Bradley's father. The court stated that there was conflicting evidence whether Mr. Roush was Bradley's father, and that resolution of that evidence was solely within the province of the Secretary.

We must disagree with the conclusion of the district court. There was no evidence on the record refuting the testimony of the witnesses that Bradley is Mr. Roush's son, testimony that the ALJ found to be "extremely credible and consistent." All the evidence on the record, with the exception of the unsubstantiated belief of a friend of Roush's (obtained over the telephone by the claims representative), supported the contention that Roush was Bradley's father. What the ALJ and the district judge accepted as persuasive was the lack of a written acknowledgment by Roush, the lack of a valid marital relationship between Roush and Ms. Parker, and the lack of a court order establishing paternity.

If lack of these indications of paternity is a bar to establishing paternity for the purposes of the Social Security Act, then § 416(h)(3)(C)(ii) is a sham. Other sections under 416(h) acknowledge that parentage may be established by written acknowledgment, by a valid wedding, or by court decree. If these events are also required to show parentage under § 416(h)(3)(C)(ii), then that section is superfluous. We cannot countenance such an unreasonable reading of the statute.

■ Section 416(h)(3)(C)(ii) permits a claimant to establish that a deceased insured is the claimant's father by evidence "satisfactory to the Secretary" when that evidence is accompanied either by the fact that the applicant lived with or was supported by the insured at the time of the

insured's death. The section is clearly intended to permit an applicant to prove parentage by a deceased insured in the absence of the formal indicators recognized by the previous sections. The Secretary may not consider the lack of these formal indicators as evidence against the applicant who must rely on section 416(h)(3)(C)(ii). *In accord, Mendoza v. Secretary of Health and Human Services*, 655 F.2d 10, 13 (1st Cir. 1981).

■ When the lack of written acknowledgment, valid marriage, or court decree is properly put aside in considering the facts of the present case, then it is clear that Bradley Parker presented sufficient evidence to show that Harry Roush was his father. The Reconsideration Determination, which quite properly did not find the lack of formal indicators to be evidence against Bradley, reached this conclusion also. The only hearing that has been conducted in this case was that before the ALJ. The ALJ found that the witnesses were extremely credible. These witnesses each testified that Bradley was the son of Mr. Roush. In light of the record now before us we conclude that Bradley Parker presented sufficient evidence, unrefuted by any competent evidence, to prove that Harry Roush was his father for the purposes of 42 U.S.C. § 416(h)(3)(C)(ii).

The second requirement of that section presents a closer question. The section requires, in addition to satisfactory evidence that the insured was the claimant's parent, that the insured had lived with or contributed to the support of the claimant at the time of the insured's death. Ms. Parker has consistently maintained that Mr. Roush contributed to Bradley's support until approximately a year before Roush died. Based on this fact the reconsideration report determined that the second prong of § 416(h)(3)(C)(ii) had not been met.

This narrow and highly restrictive reading of the "support requirement" of § 416(h)(3)(C)(ii) has not been favored by the courts and certainly cannot be accepted on the facts of the present case. Ms. Parker testified that while she did not receive support money from Roush during the last year of his life, neither did she ever ask for support during that time. She testified that had she asked for support for Bradley then Roush would have provided it. This testimony of the "extremely credible" witness is buttressed by the facts that Ms. Parker was employed during this time while Mr. Roush was extremely ill and either bedfast or hospitalized.

In *Boyland v. Califano*, 633 F.2d 430 (1980), this Court held that the support requirement of 42 U.S.C. § 416(h)(3)(C)(ii) had been met although the deceased father's contributions to his illegitimate children had been irregular and insubstantial. In *Boyland* the father was retired and had minimal resources at the time of his death. The Court concluded that the support requirement must be viewed in the context of the father's ability to pay and the needs of the child.

Other courts have taken a similar view. In *Madison v. Richardson*, 354 F.Supp. 383 (M.D.La.1973), the court found that the support requirement of 42 U.S.C. § 416(h)(3)(C)(ii) was met at the time of an insured's death notwithstanding the fact of separation and non-support where the insured was in circumstances beyond his control and was unable to support his children. In *Santiago v. Mathews*, 431 F.Supp. 1213 (E.D.N.Y.1977), the court concluded that the support test of § 416(h)(3)(C)(ii) must be evaluated in light of the specific facts of the father's financial situation and the claimant's need. In evaluating the support requirement of this same section in relation to a posthumous child, the Second Circuit stated in *Adams v. Weinberger*, 521 F.2d 656, 659 (1975), that support was sufficient when commensurate with the child's needs.

■ We agree with the teaching of these cases that the "support requirement" of 42 U.S.C. § 416(h)(3)(C)(ii) is not a fixed rule requiring regular or substantial support, but rather, must be evaluated in light of the father and child's actual circumstances. In the present case Mr. Roush had contributed to Bradley's support over a period of approximately ten years up until the onset of the illness which ended Mr. Roush's

life.[1] During that year Bradley's mother did not experience a need for support from Roush, and did not seek aid from the dying man. She was convinced that Roush would have assisted Bradley if she had asked, and the truth of this conviction is supported by Roush's request to his mother to continue to help Bradley whenever possible. Under these circumstances we hold that the support requirement of § 416(h)(3)(C)(ii) was met.

For the reasons stated above the judgment of the district court is REVERSED and the cause is remanded to the Secretary with directions that appellant be paid benefits to which he is entitled as the surviving child of Harry Roush.

---

1. The present case is easily distinguished from *Kohut v. Secretary of Health, Education and Welfare*, 664 F.2d 120 (6th Cir. 1981), where the record amply supported the Secretary's determination that a deceased father had not contributed to the applicant's support.